**NOT FOR PUBLICATION**                                      **CASE CLOSED**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| _____ | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| IN RE BED BATH & BEYOND INC. | : | CIVIL ACTION NO. 06-5107 (JAP) |
| DERIVATIVE LITIGATION | : | |
| | : | |
| | : | |
| | : | |
| | : | **OPINION** |
| | : | |
| _____ | : | |

Plaintiff, Richard Feller ("Plaintiff") brings this shareholder derivative action on behalf of

Bed Bath & Beyond, Inc. ("BBB") against nineteen of BBB's present and former officers and

directors (collectively, the "Defendants").  The Defendants filed this motion to dismiss Plaintiff's

Verified Consolidated Shareholder Derivative Complaint ("Federal complaint") pursuant to Fed.

R. Civ. P. 12(b)(6).  In their motion, the Defendants argue that Plaintiff's claims are barred by the

doctrines of collateral estoppel and *res judicata*.

For the following reasons, the Court finds that Plaintiff's claims are precluded by the

disposition of a prior state court action and, thus, grants the motion to dismiss in favor of the

Defendants.

I.      **Factual History**

BBB is a New York corporation with its principal executive offices headquartered in New

Jersey.  BBB is a publicly held company that owns and operates a chain of nationwide retail

stores, such as Bed Bath & Beyond, Christmas Tree Shops and Harmon.  The stores sell a wide

assortment of goods ranging from domestic furnishings to food and health and beauty products.

On June 5, 2006, Merrill Lynch issued a report that included BBB as a company suspected of options backdating because the market price for BBB's shares climbed significantly after the options had been issued.[1]  Deutsche Bank issued a similar report on June 14, 2006.  In response, on June 19, 2006, the BBB board appointed a Special Committee of two board members to conduct an investigation of the backdated options.  On June 26, 2006, the Special Committee retained the firm Weil, Gotshal & Manges LLP ("Weil Gotshal") as independent legal counsel to conduct an investigation.  Weil Gotshal then engaged Navigant Consulting, Inc. on June 25, 2006, to act as independent accounting advisors.

From June 2006 to October 2006, the Special Committee reviewed all stock options grants and restricted stock awards made by BBB from the date of its initial public offering in 1992 through May 15, 2006.  The Special Committee concluded that evidence of several control and other deficiencies in BBB's process of granting and documenting of stock options and restricted shares existed, but the backdating was deemed to have been unintentional.  BBB voluntarily reported the Special Committee's findings to the Securities and Exchange Commission ("SEC") on September 20, 2006.  BBB also filed a Form 8-K on October 10, 2006,

---

[1] Stock options grants are used by companies as non-cash incentives for employees to improve the company's performance and, therefore, stock price.  Stock options give the employee the right to shares of the company's stock at a price known as the strike price, which is equal to the value of the stock on a certain date.  Typically, stock options are valued at the fair market price of the stock the day the options are granted.  Theoretically, then, the employee would profit from the difference between the value of the stock at its strike price and the stock price on the day the employee exercises the options.  Options backdating occurs when the employee moves the date a stock option was granted back in time, typically to a date when the stock price was lower, which would allow the employee to make a larger profit when he or she finally exercises the grants.  For instance, if an employee's options are 100 shares valued at $20 a share and then sells them for $30 a share, the employee will make a profit of $1,000.  If, however, that same employee backdates the option to a day when the stock was valued at a lower price, say $10, then the employee would make a $2,000 profit.

at which time it publicly disclosed the Special Committee's report and that the SEC would be conducting an informal inquiry.  In response to the Special Committee's recommendations, BBB reformed the company's policy regarding stock options grants through the adoption of new controls as well as revised the dates of particular options grants in accordance with accounting principles.

Further, although BBB determined that there were no material changes to its financial condition in the specified time period, it made several adjustments to its financial balance sheets for the fiscal year ending on March 31, 2007.  In December 2006, BBB also reset the price of all unvested options, which increased the exercise price on the dates the Special Committee determined to be the appropriate adjustment dates.  Both executives and lower-level employees benefitted from this resetting and BBB agreed to pay the price differential to the lower-level employees, but not to the executives.

As a result of the investigations and announcements, BBB shareholders filed derivative lawsuits against the directors and officers of BBB.  On October 19, 2006, Arnold Wandel brought suit on behalf of BBB in New York state court.  Five days later, on October 24, 2006, Richard Feller, a different BBB shareholder filed this derivative suit in the District of New Jersey.  Both plaintiffs later filed amended complaints on January 4, 2007 and March 26, 2007, respectively.

### A.    The State Court Lawsuit

The amended New York state court complaint ("State Court complaint") sought damages from the defendant directors and officers for several causes of action including alleged violations

of fiduciary duties, unjust enrichment, gross mismanagement, and corporate waste.[2]  The State

Court complaint alleged that the defendants were liable to BBB for participating in a stock

options backdating scheme.  From 1992 to 2006, the plaintiff contended that the BBB board

controlled the recording of grant dates for all stock options, including their own, and backdated

their stock options to dates when BBB's stock price was at a low value, which allowed certain

defendants to sell millions of dollars worth of BBB stock at inflated prices.

The State Court complaint alleged that making demand on the BBB board would have

been futile because a majority of directors were interested as a result of the financial benefit they

derived from the backdating of the stock options, which they also approved.  Additionally, the

complaint claimed that the board did not implement a system of sound financial controls

regarding stock options grants or inquire about the options backdating once the information

surfaced.  The state plaintiff alleged that the misconduct was not an exercise of good faith

business judgment and did not acknowledge any of the remedial actions and monetary

adjustments the BBB board, on its own initiative, promptly undertook to revoke or reprice the

backdated options or recover any damages from the recipients of the options.

The New York state court dismissed the complaint on May 18, 2007.  Justice Ramos of

the Supreme Court of New York applied New York's Business Corporation Law ("BCL"),

specifically, BCL § 626, which deals with shareholder derivative actions brought in the

corporation's name to procure a judgment in the corporation's favor.  If a corporation's

shareholder intends to bring an action in the name of the corporation, BCL § 626 requires that the

---

[2]  The defendants included: Warren Eisenberg, Leonard Feinstein, Steven Temares, Arthur Stark, Matthew Fiorilli, Ronald Curwin, Eugene Castagna, Robert Kaplan, Dean Adler, Victoria Morrison, Fran Stoller, Klaus Eppler, Stanley Barshay, Jordan Heller, Robert Swartz.

shareholder's complaint "set forth with particularity the effort to secure the initiation of such action by the board or the reasons for not making such effort."  N.Y. B.C.L. § 626(c).

Shareholders who bring an action in the name of a corporation are attempting to remedy any wrongs to the corporation committed by its officers or directors.  "Derivative actions serve the important purpose of protecting corporations and minority shareholders against officers and directors who, in discharging their official responsibilities, place other interests ahead of those of the corporation."  *Bansbach v. Zinn*, 1 N.Y.3d 1, 8 (2003).  Courts, traditionally, are wary of interfering with the business judgement of a corporation's board of officers and directors.  The purpose of the demand requirement, therefore, is to first allow the corporation's board to address any alleged wrongdoings before the court becomes involved in the matter.  *See id.* (explaining that the demand requirement rests on the principle that the management of the corporation is "entrusted to its board of directors...who are often in a position to correct alleged abuses without resort to the courts").

Pre-suit demand is excused when a complaint alleges with particularity that demand on the board would have been futile because: 1) a majority of the board of directors is interested in the challenged transaction;[3] 2) the board of directors "did not fully inform themselves about the challenged transaction to the extent reasonably appropriate under the circumstances;" or, 3) "the challenged transaction was so egregious on its face that it could not have been the product of sound business judgment of the directors."  *Id.*

---

[3] A director can be interested in two ways: 1) a director has a self-interest in the transaction at issue or 2) a director does not have any direct interest in the transaction, but suffers a loss of independence because he or she is 'controlled' by a director who is interested.  *See Bansbach*, 1 N.Y.3d at 9 (citing *Marx v. Akers*, 88 N.Y.2d 189, 200).

Applying New York law, the court held that the "plaintiff failed to make demand on the

Board, and board futility was not pled with particularity in accord with BCL § 626(c)." *Wandel*

*v. Eisenberg et al.*, Index No. 603665/06, slip op. at 5 (N.Y. Sup. Ct. May 18, 2007).  The New

York court determined that the plaintiff's allegations lacked particularity as to why seven of the

ten directors were interested in the backdating of the stock options.  The state plaintiff's broad

conclusory allegations were insufficient to prove demand futility and the mere presence of the

directors on the board was not enough to evidence any impropriety on their part.  Furthermore,

the court found that the complaint was "deficient as to how the directors allegedly failed to

inform themselves to a degree reasonably necessary about the transaction, or how directors

allegedly failed to exercise their business judgment in approving the transaction...the complaint

fails to address any egregious [] act in support of demand futility." *Wandel*, Index No.

603665/06, at 7.

As a result, the New York court dismissed the case because the complaint failed to plead

with particularity why demand on the BBB board would have been futile.  Moreover, there was

evidence that the Board had already taken steps to investigate, report, and remedy the faulty

option practices.

**B.     The Federal Court Lawsuit**

This March 26, 2007 Federal complaint includes substantially similar allegations to those

raised in the State Court complaint as well as additional causes of action, backdated options, and

insider trades.  The Federal complaint alleges eight additional claims, three of which are federal

causes of action.[4]  Further, in addition to the defendants named in the State Court complaint,

Plaintiff implicates five other defendants.[5]

Similar to the State Court complaint, the Federal complaint claims that Plaintiff did not

make demand on the BBB board because such demand would have been futile.  Specifically, the

complaint asserts that because the Defendants "faced at the very least a substantial likelihood of

liability in connection with their illegal backdated Company stock options" and because "they

had a financial interest in the options they illegally backdated and the proceeds they gained from

the exercise of those options," the Defendants are interested.  Am. Compl. ¶ 101.  Further,

Plaintiff contends that the entire board, as well as the board members who sat on the

Compensation and Audit Committees are liable "for failing to fulfill its fiduciary duties to BBB

in approving the option grants as dated."  Am. Compl. ¶ 102.  Additionally, the Federal

complaint maintains that the Defendants who were members of the two Stock Option

Committees are interested because "they did not act to inform themselves of the circumstances

surrounding these option grants, thereby causing or allowing the Company's insiders to obtain

unreasonable and unreported compensation via the backdating of stock option grants;" the Stock

Option Committees' decisions to approve the options backdating was not the product of valid

---

[4]  Plaintiff's causes of action include abuse of control, accounting, rescission, constructive trust, breach of fiduciary duty relating to insider trading, violations of Sarbannes-Oxley Act ("SOX"), and violations of Section 10(B) and 14(A) of the Securities Exchange Act of 1934 ("10(A) and 14(B)," respectively).

[5]  The Defendants are: Steven H. Temares, Matthew Fiorilli, Arthur Stark, Ronald Curwin, Eugene A. Castagna, Warren Eisenberg, Leonard Feinstein, Robert S. Kaplan, Klaus Eppler, Dean S. Adler, Victoria A. Morrison, Stanley F. Barshay, Jordan Heller, Fran S. Stoller, G. William Waltzinger, Jr., Allan N. Rauch, Jonathan Rothstein, Richard D. Falcone and Christopher P. Forester (collectively, "Defendants").  The Federal Complaint does not implicate Robert Swartz, as the State Court complaint had.

business judgment.  Am. Compl. ¶ 103.  Lastly, Plaintiff pleads that the Defendants' insider

trading transactions rendered them interested because of their personal financial gain and

"incapable of impartially considering a demand to commence and vigorously prosecute this

action."  Am. Compl. ¶ 106.

The Defendants move to dismiss the Federal complaint on the grounds that collateral

estoppel and *res judicata* bar the federal suit because of the dismissal in the prior state action.


**II.      Standard of Review**


A motion on the grounds of collateral estoppel or *res judicata* may be properly considered

as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  *Rycoline Prod.*

*v. C&W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997).  Federal Rule of Civil Procedure 12(b)(6)

permits a court to dismiss a complaint that fails "to state a claim upon which relief can be

granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a Rule 12(b)(6) motion to dismiss, the court must

reasonably read the complaint and decide whether the plaintiff has pled a cognizable cause of

action entitling her to relief.  *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).  In making this

determination, a court accepts as true all of the well-pleaded factual allegations within the

complaint and any reasonable inferences drawn therefrom.  *Hayes v. Gross*, 982 F.2d 104, 105-

06 (3d Cir. 1992).  The court may also consider exhibits attached to the complaint, matters of

public record, and documents that form a basis of plaintiff's claim.  *Lum v. Bank of Am.*, 361

F.3d 217, 222 n.3 (3d Cir. 2004).  However, the court need not consider plaintiff's bald

assertions or legal conclusions.  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.

1997).

Under the full faith and credit statute, 28 U.S.C. § 1738, a federal court must give a

judgment in state court the same preclusive effect the judgment would have been given in the

state that it was rendered.  *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

Therefore, this Court will apply New York state law in determining whether the judgment in the

New York action has both collateral estoppel and *res judicata* effect on later actions.

Collateral estoppel, also known as issue preclusion, bars parties from bringing the same

lawsuit against the same parties in different courts if the issues are identical.  The "doctrine of

collateral estoppel is 'essentially a rule of justice and fairness,' and the essence of the rule is 'that

a question once tried out should not be relitigated between the same parties or their privies.'"

*Hinchey v. Sellers*, 7 N.Y.2d 287, 294 (N.Y. 1959) (quoting *Commissioners of State Ins. Fund v.

Low*, 3 N.Y.2d 590, 595 (N.Y. 1958)); *see also Juan C. v. Cortines*, 89 N.Y.2d 659, 667 (N.Y.

1997) (noting that collateral estoppel is based on a notion of fairness and "'intended to reduce

litigation and conserve resources of the court and litigants'").

*Res judicata*, also known as claim preclusion, bars parties from bringing the same lawsuit

against the same parties in different courts if the claims are identical.  "Putting an end to a matter

for all time is fair to the party who has endured the cost and travail of a ligation, fair to the party

whose claim has once been heard, and in the interest of the judicial system generally."  *Hodes v.

Axelrod*, 70 N.Y.2d 364, 372 (N.Y. 1987).  *See also Matter of Reilly v. Reid*, 45 N.Y.2d 24, 28

(N.Y. 1978).

III.    **Discussion**

A.    *Issue-Identity Requirement*

Plaintiff contends that the issues and claims raised in the Federal complaint are materially different from the State Court complaint and, therefore, cannot be precluded under collateral estoppel or *res judicata*.  Plaintiff argues that the relevant issue for the Court to consider is not whether demand was futile, but whether particularized facts were pled and considered to determine demand futility.  Further, Plaintiff claims his action is not identical to the New York action because his complaint contains violations of federal law, insider trading transactions, and an additional $12 million in backdated stock options.  Plaintiff argues that to preclude this action would be to permit five additional defendants to completely avoid liability.

In determining whether issue identity is met, "the issue must have been material to the first action...and essential to the decision rendered therein, and it must be the point actually determined in the second action...such that a 'different judgment in the second would destroy or impair rights or interests established by the first.'"  *Ryan v. New York Telephone Co.*, 62 N.Y.2d 494, 500-501 (N.Y. 1984) (citing *Schuylkill Fuel Corp. v. B. & C. Nieberg Realty Corp.*, 250 N.Y. 304, 307 (N.Y. 1929)).  Additionally, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy."  *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (N.Y. 1981).  Moreover,

> "A 'cause of action' may denote one of several separately stated claims in a pleading based on the same congeries of facts but related to different legal theories of recovery.  A 'cause of action' may also denote a separately stated claim on the same congeries of facts, but for different legal relief.  But even if there are variations in the facts alleged, or different relief is sought, the separately stated 'causes of action' may nevertheless be grounded on the same gravamen of the wrong upon which the action is brought.  In the sense of *res judicata* or claim preclusion, although there may be separately stated or stateable causes of action, they are nevertheless based on the 'same cause of

action....'"  *Reilly*, 45 N.Y.2d at 29.

The Federal complaint alleges, as did the State Court complaint, that demand would have been futile because of the level of involvement the board members had in connection with the proposed claims regarding the options backdating, the incorrect accounting for options, and the consequent misstating of financial statements and public filings.  Plaintiff relies on a number of charts and graphs to demonstrate the benefit the Defendants derived from the stock trades and the composition of the various committees as evidence that the Defendants were interested parties, and points to the additional causes of action raised such as insider trading and violations of SOX and 10(B) and 14(A).  Plaintiff believes he has adequately pled demand futility by showing that the additional board members not named in the State Court complaint each approved backdated stock options, failed to inform themselves to a reasonable degree necessary about the transaction, and breached their fiduciary duty by ignoring the backdating.

However, because the prior plaintiff did not plead every possible cause of action or include every possible time period or defendant does not alter the central issue - whether demand on the BBB board would have been futile - which has already been determined by the New York court. Insofar as Plaintiff proffers new claims, these additions to the Complaint are irrelevant as they still derive from the same gravamen of wrong as the state action - the options backdating. The Court thus concludes that the issue-identity factor has been met.

> B.      *"Full and Fair Opportunity to Litigate" Requirement*

In determining "whether the first action or proceeding genuinely provided a full and fair opportunity" to the original litigant, a court must consider "the 'realities of the [prior] litigation,'

including the context and other circumstances which * * * may have had the practical effect of

discouraging or deterring" the plaintiff from "fully litigating" the action.  *Ryan*, 62 N.Y.2d at

501.[6]  Factors that a court may consider are "the nature of the forum and the importance of the

claim in the prior litigation...the actual extent of litigation, the competence and expertise of

counsel...."  *Id.*  Further, when "the issue previously litigated was necessary to support a valid

and final judgment on the merits."  *Alamo v. McDaniel*, N.Y.S.2d 477, 481 (N.Y. App. Div.

2007) (citing *Ryan*, 62 N.Y.2d at 500).

A decision need not be marked "dismissal on the merits" to be considered a final order

under New York state law; rather, the finality of an action can also be determined by focusing on

the judge's reasoning, determination, and context of the proceedings.  *See Lipin v. Bender*, 216

A.D.2d 131, 132 (N.Y. App. Div. 1995) ("Although the prior order did not specifically recite that

the dismissal was 'on the merits,' it is clear from the prior Judge's stated reasons and the context

of the proceedings...that the intent of the prior order was...[to dismiss] her action with

prejudice....").  A dismissal for failure to make demand on a board is considered substantive and,

therefore, on the merits.  *See Kamen v. Kemper Fin. Services, Inc.*, 500 U.S. 90, 96-97 (1991)

(noting that the function of the demand doctrine is clearly substantive and not procedural); *Henik

v. LaBranche*, 433 F. Supp. 2d 327, 379 (S.D.N.Y. 2006) ("the issue of whether or not [a] board

of directors did not lack the disinterestedness and independence needed to consider a demand -

---

[6]  A pending appeal in the original action, as there is in the New York action, does not change the finality of the judgment and collateral estoppel and *res judicata* apply once judgment is entered in the original action.  *See Chariot Plastics, Inc. v. United States*, 28 F. Supp. 2d 874, 881 (S.D.N.Y. 1998) (applying New York law and citing *Petrella v. Siegel*, 843 F.2d 87, 90 (2d. Cir. 1988)); *Matter of Amica Mut. Ins. Co.*, 85 A.D.2d 727, 728 (N.Y. Sup. Ct. 1981) ("The rule in New York, unlike that in other jurisdictions, is that the mere pendency of an appeal does not prevent the use of the challenged judgment as the basis of collaterally estopping a party to that judgment in a second proceeding.").

albeit technically a procedural issue of standing to proceed derivatively - does constitute a 'decision on the merits' for the purpose of preclusion"); *Locals 302 and 612 of Int'l Union of Operating Engineers-Employers Constr. Indus. Ret. Trust v. Blanchard*, 2005 WL 2063852, at *6 (S.D.N.Y. 2005) ("both the Supreme Court and Court of Appeals have found that demand rules in derivative actions are substantive in nature...'the issue is not just 'who' may maintain an action or 'how' it will be brought, but 'if it will be brought.'  No determination could be more substantive.") (quoting *Hausman v. Buckley*, 299 F.2d 696, 701 (2d Cir. 1962)).  Therefore, a decision in a prior action that the plaintiff did not have standing because of a failure to make demand is on the merits and final in its determination.  *See Henik*, 433 F. Supp. 2d at 379 (dismissing the plaintiff's action and holding that a prior ruling on shareholder standing is a 'decision on the merits'); *Welt v. Abrams*, 832 F. Supp. 88, 92-93 (S.D.N.Y. 1993) (an earlier decision that the plaintiff did not have standing in the prior action is final in its determination); *Auerbach v. Bennett*, 47 N.Y.2d 619, 627-628 (N.Y. 1979) ("a dismissal on the merits of one derivative action is generally a bar to suits by other stockholders of the same corporation on the same cause of action"); *Levin v. Kozlowski*, No. 602113/02, 2006 WL 3317048, at *12 (N.Y. Sup. Ct. Nov. 14, 2006) ("a decision on derivative standing is clearly on the merits because it turns on the facts with respect to the board and its ability to exercise its powers") .

Plaintiff, here, is precluded from bringing this action because the New York plaintiff had a full and fair opportunity to litigate the derivative action.  The New York court's decision to dismiss the plaintiff's complaint for lack of standing because the plaintiff failed to make demand on the BBB board is a final and valid judgment on the merits.  Furthermore, the cover page of the decision was marked "Final Disposition."  Plaintiff argues that the state plaintiff's representation

was inadequate and, therefore, a full and fair opportunity to litigate did not exist in the prior

action.  The Court finds this argument unconvincing because there is no evidence to support

that counsel in the state court action was deficient and counsel for the New York plaintiff has

been involved in major class action lawsuits, which render them quite familiar with the

requirements of demand futility.

Moreover, the New York plaintiff had two opportunities to draft his complaint.  The

plaintiff even had the opportunity to see the defendants' motion to dismiss before the plaintiff

drafted his amended complaint; thus, he was aware of what issues, arguments, and case law

would be raised, particularly regarding demand futility.  The state plaintiff was also provided

ample time to draft his position and permitted to submit additional cases post-briefing.  Failure of

the state court plaintiff to raise the additional claims and issues that Plaintiff has raised here does

not justify relitigation.  Were the Court to allow this action to proceed, the Court would be

departing from well-settled principals of finality, repose and judicial economy.

C.    *Party-Identity Requirement*

"Generally, to establish privity the connection between the parties must be such that the

interests of the nonparty can be said to have been represented in the prior proceeding."  *Green v.*

*Santa Fe Indus., Inc.*, 70 N.Y.2d 244, 253 (N.Y. 1987).  In shareholder derivative actions, it is

well-established that the corporation is the real party in interest.  "The corporation is a necessary

party to the action; without it the case cannot proceed.  Although named a defendant, it is the real

party in interest, the stockholder being at best the nominal plaintiff."  *Ross v. Bernhard*, 396 U.S.

531, 538 (1970); *see also Levin*, 2006 WL 3317048, at *10 (noting that shareholder plaintiffs in

derivative suits are "equal and effectively interchangeable...because their claims belong to and

are brought on behalf of the corporation, rather than on behalf of themselves").  This treatment is

necessary in order to avoid the possibility that plaintiffs "could indefinitely relitigate the demand

futility question in an unlimited number of state and federal courts."  *Henik*, 433 F. Supp. 2d at

380.

  The claims alleged and any proceeds from a prior action do not belong to the shareholder

plaintiffs; rather, they belong to the corporation itself.  *See id.* ("The proceeds of the action

belong to the corporation and it is bound by the result of the suit."); *Auerbach*, 47 N.Y.2d at 631

("Derivative claims against corporate directors belong to the corporation itself.").  Because the

corporation is the real party in interest, a "judgment rendered in such an action brought on behalf

of the corporation by one shareholder will generally be effective to preclude other actions

predicated on the same wrong brought by other shareholders."  *Parkoff v. Gen. Tel. & Electronics

Corp.*, 53 N.Y.2d 412, 420 (N.Y. 1981).

  Plaintiff claims the State Court complaint did not point to specific transactions

approved by or entered into by each member of the board and merely asserted conclusory

statements of demand futility, and because of these differences, the prior prosecution was

inadequate and there is no privity between the state and federal plaintiffs.[7]  Plaintiff proffers what

---

[7] Plaintiff argues there is no privity between him and the state court plaintiff and contends that the representation in the prior action was inadequate.  Plaintiff relies on *Ji v. Van Heyningen*, No. CA 05-273 ML, 2006 WL 2521440, at *4 (D.R.I. Aug. 29, 2006).  The *Ji* court's analysis cited to *Paplisky v. Berndt*, 466 F.2d 251 (2d Cir. 1972) and *In re Sonus Networks, Inc., S'holder Derivative Action*, 422 F. Supp. 2d 281 (D. Mass. 2006), cases which centered on the adequacy of representing a nonparty's interests in determining whether privity existed between the parties.
  While the Court recognizes the concern in protecting the interests of a nonparty shareholder, the Court does not find that the plaintiff in the state court action was inadequately represented to the detriment of the nonparty shareholders in this action.  The Court finds the First Circuit's reasoning in

he deems as "significant differences" between the two complaints.  Among these differences,

Plaintiff highlights that he has pled with particularity facts as to which individual Defendants

granted each of the backdated options or served on the committees, received the backdated

options and benefitted from them, and the language of each of the stock options plans to show

which committees were responsible for administering the plans.

Despite the alleged differences between the State Court and Federal complaint, those

differences are not enough to demonstrate that counsel in the prior action was "grossly deficient"

in drafting the New York plaintiff's pleadings.  The Court does not find that the plaintiff in the

state court action was inadequately represented to the detriment of the nonparty shareholders in

this action; therefore, privity between the plaintiffs exists and the prior decision has preclusive

effect on this action.

## IV.     Conclusion

As Plaintiff's entire claim is barred by the doctrine of claim preclusion, the Court finds

that Plaintiff has failed to state a claim; thus, the Court grants the motion to dismiss in favor of

---

*Sonus Networks, Inc., S'holder Derivative Action*, 499 F.3d 47 (1st Cir. 2007) instructive.  Inadequate representation, as the First Circuit reasoned, "is not 'failure of a representative to invoke all possible legal theories or to develop all possible resources of proof,' but rather representation 'so grossly deficient as to be apparent to the opposing party.'" *Sonus*, 499 F.3d at 66.

Despite the alleged differences between the State Court and Federal complaint, those differences are not enough to demonstrate that counsel in the prior action was "grossly deficient" in drafting the New York plaintiff's pleadings.  Moreover, the plaintiff's representation in the state action was far from inadequate as he was represented by highly experienced counsel who have litigated several high-profile securities cases.  Due to their vast experience with these types of cases, the attorneys are undoubtedly familiar with alleging demand futility.

Defendants.


Date: November 19, 2007                          /s/ JOEL A. PISANO
                                                 United States District Judge